# STATE v. J. F. GRUBER.[1]

December 8, 1911.

Nos. 17,435—(6).

**Sale of adulterated confectionery.**

Defendant, as traveling salesman for a New York manufacturer, took an order from a dealer in St. Paul for certain confectionery; such order being subject to acceptance or rejection by the manufacturer. The order was accepted by packing the confectionery in boxes and delivering the same to a carrier in New York for shipment to the dealer in St. Paul. A portion of such confectionery was colored with coal-tar dye. It is *held:*

1. That the sale of the confectionery took place wholly in New York, and therefore did not constitute a violation of R. L. 1905, § 1767, prohibiting the manufacture or sale of confectionery colored with coal-tar dye.

2. It is not criminal under the laws of this state to aid or abet the doing of an act in another state, though such act would violate the laws of this state if done within its borders.

3. Defendant, in taking and forwarding the order, was not guilty of selling adulterated confectionery in this state, or of aiding or abetting in such a sale.

Complaint in the municipal court of St. Paul that defendant had sold confectionery in that city which contained coal-tar dye, contrary to the Minnesota statute. Defendant pleaded not guilty. The facts were stipulated. No other evidence being offered, defendant's motion for dismissal was denied, and defendant was found guilty as charged in the complaint, Finehout, J. He was sentenced to pay a fine of $100. From the judgment of guilty and sentence to pay $100, defendant appealed. Reversed.

*Brooks & Jamison,* for appellant.

*George T. Simpson,* Attorney General, *Lyndon A. Smith,* Assistant Attorney General, *O. H. O'Neill,* Corporation Attorney of St. Paul, and *John Burns,* City Prosecutor, for the state.

[1] Reported in 133 N. W. 571.

BUNN, J.

This is an appeal from a judgment of the municipal court of St. Paul adjudging defendant guilty of wrongfully, unlawfully, and wilfully selling to Mrs. R. B. Superior, in St. Paul, confectionery which contained coal-tar dye, in violation of section 1767, R. L. 1905. This statute is as follows:

"No person shall manufacture or sell adulterated confectionery; and confectionery shall be deemed adulterated if it contain terra alba, barytes, talc, coal-tar dye, or any other poisonous or injurious coloring matter, or any poisonous or injurious flavoring matter, or any substance injurious to health."

The facts were stipulated. Defendant resided at Elmira, New York, and was a traveling salesman of O. T. Stacy Company, a corporation under the laws of New York, having its place of business in Rochester, in that state. All of the officers of O. T. Stacy Company live in New York, its business is the manufacture and sale of confectionery at said city of Rochester, and it has never maintained any office or place of business in Minnesota. On August 23, 1910, defendant in the regular course of his employment as such traveling salesman called upon Mrs. Superior in St. Paul, and solicited and obtained from her an order for certain confectionery. He did not exhibit samples of the confectionery ordered, but stated that the color of said confectionery would be pure. He then wrote out the order upon a blank order form of the O. T. Stacy Company and forwarded it to such company in Rochester, New York. Defendant acted solely in the capacity of a traveling salesman for O. T. Stacy Company. He had no authority to accept the order, but took it subject to acceptance or rejection by said company, when received at Rochester. He had nothing further to do with the transaction after taking and forwarding the order, and no personal knowledge of when or how such order was filled or shipped.

September 4, 1910, Mrs. Superior received from O. T. Stacy Company certain confectionery in fulfilment of said order. This confectionery was shipped by rail by said O. T. Stacy Company from Rochester, New York, direct to Mrs. Superior, at St. Paul. Before such shipment, it was packed in twenty-nine pasteboard

boxes, and these boxes were packed in one wooden box, which was securely nailed, and consigned as one package to Mrs. Superior. When received the merchandise was in the original pasteboard boxes and in the original wooden box, which were in the same condition as when shipped. The confectionery, at the time of the shipment and when received, contained coal-tar dye which had been employed to color said confectionery.

The final paragraph of the stipulation of facts is as follows: "Certain coal-tar dyes are poisonous and injurious to the health of those who eat the substances colored by them. The Federal government has held that the use in food, for any purpose, of any coal-tar dye except certain coal-tar dyes mentioned by name, will be grounds for prosecution under the pure food and drug law of June 30, 1906. One of the coal-tar dyes excepted from the general class and condemnation of coal-tar dyes is a certain coal-tar dye described as 'Orange Shade, No. 85,' and defined as 'Orange 1'; that the confectionery shipped as aforesaid to Mrs. R. B. Superior and ordered by her of O. T. Stacy Company, through J. F. Gruber, defendant, as hereinbefore stipulated, was colored by said coal-tar dye last described, to wit, 'Orange Shade No. 85, Orange 1,' and not otherwise."

No evidence was received or offered, except as embodied in the stipulation of facts and necessarily our decision must be based on such stipulation.

1. R. L. § 1767, forbids, and section 1775, makes criminal, a sale of confectionery which is colored with coal-tar dye. Of course, it is a sale within this state that is made an offense. The legislature could not and did not prohibit a sale outside of the borders of this state, or make such a sale a crime under our laws. Nor does the law forbid the shipment of such adulterated confectionery into this state. It follows, then, that the first question presented for our consideration is whether the sale of the confectionery in question was made in this state or in New York.

It appears from the stipulation that defendant took the order and forwarded it to O. T. Stacy Company in New York. It was subject to be rejected or accepted by O. T. Stacy Company. There

was no sale and no contract until the order was accepted. O. T. Stacy Company packed the goods ordered, and delivered the same to the carrier in New York for shipment to Mrs. Superior. By so doing, it accepted the order, and the sale was then complete. It is the law that, where an order is given for goods and is accepted by delivery of the goods to a carrier for shipment with the intention of transferring the property to the buyer, the sale is governed by the law of the place of shipment. 35 Cyc. 94, and cases cited; Bollinger v. Wilson, 76 Minn. 262, 79 N. W. 109, 77 Am. St. 646. In the Bollinger case an agent of the Schlitz Brewing Company of Milwaukee, Wisconsin, had taken an order for beer from plaintiff, an Iowa dealer. The Brewing Company accepted the order and shipped the beer at Milwaukee to the dealer in Iowa. It was held that the sale was made in Wisconsin, and that neither the agent nor the Brewing Company could be convicted of selling liquor in Iowa contrary to the statutes of that state. Mr. Justice Mitchell said: "Authorities to this effect are abundant." If O. T. Stacy Company brought suit against Mrs. Superior for the purchase price of the confectionery, and the latter defended on the ground that the sale was prohibited under the Minnesota laws, the plaintiff would necessarily prevail on the ground that the sale was made in New York and therefore not in violation of the laws of this state. The authorities are not only abundant, but conclusive. There is no escape from holding that the sale in question was made in New York, and therefore was not a violation of the statute of this state prohibiting the sale of confectionery containing coal-tar dye.

2. It seems to have been the position of the trial court, and to be that of the state, that defendant can be convicted of the sale because he aided or abetted in making it. It is quite impossible to see how a person can be guilty of aiding or abetting in the commission of a crime when no crime is committed. Had the sale been made in Minnesota, the statute would make a person who aided, abetted, or helped to bring it about guilty as a principal, and under this statute and a provision of R. L. § 1775, making the doing of any act prohibited by the chapter prima facie evidence of an intent to violate the law, a conviction might be sustained. But when the act that is

claimed to constitute the crime is done in another state, and particularly where it is not a crime in the state where it is done, persons in this state who counsel, aid, or abet the doing of the act are no less innocent of any violation of our laws than is the nonresident who actually does the act. The cases where a man is shot, stabbed, or poisoned in this state and death occurs in another state are not in point. The ground of holding that the offense is committed in this state is that the acts which caused the death constitute the offense, and that the death is not the act of defendant committed in the other state, but the consequence of his acts committed in this state and against the laws of this state. State v. Gessert, 21 Minn. 369.

Nor can the act of defendant in taking the order be considered a part of the sale, so that it can be said that the sale took place in part within this state. The prohibited act was the sale, and that took place wholly in New York. Defendant, in helping bring about a sale in New York, was not violating a law of Minnesota. The case of Strassheim v. Daily, 221 U. S. 280, 31 Sup. Ct. 558, 55 L. ed. 735, relied on by the trial court is far from being in point. In that case the crime was committed in Michigan, and the rule applied that the guilty party could be convicted in the courts of that state, though he had never been within its borders, providing, of course, that the state succeeded in obtaining jurisdiction of his person. If a resident of New York should commit a crime in this state, or aid in its commission, it is not doubted that the courts of this state could convict and punish him, if they could get him in their power; and it seems equally clear that, if a resident of this state aids in a violation of the laws of New York, he must be tried, not in this state, but in New York.

3. We therefore hold that defendant was not guilty of selling adulterated confectionery in this state, or of aiding or abetting in such a sale. This is decisive of the case, and we consider it unnecessary to determine whether confectionery colored with "Orange Shade, Orange 1" coal-tar dye is a legitimate article of interstate commerce, or recognized as such by the Federal authorities. A decision on the interstate commerce feature of the case would be of

116 M.—15.

small value, based, as it would have to be, on the peculiar facts disclosed by the stipulation.

Judgment reversed.